IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**ROBERT W. SMITH,**

    **Plaintiff,**

v.                                                     Civil Action No. 3:23-cv-524

**ANTONYO D. KELLER,**

    and

**BIGO LIVE,**

    **Defendants.**

## MEMORANDUM OPINION

This matter is before the Court to review the sufficiency of a Second Amended Complaint, (ECF No. 10), filed by *pro se* Plaintiff Robert W. Smith in response to an Order to Show Cause issued by the Court, (ECF No. 7). For the reasons articulated below, the Court will dismiss this action without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3)[1].

### I. Factual and Procedural Background

On August 16, 2023, Mr. Smith submitted an Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application," ECF No. 1)[2], along with a proposed

---

[1] Federal Rule of Civil Procedure 12(h)(3) provides: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

[2] When a party proceeds in district court without prepaying fees or costs, it is said that the party is proceeding *in forma pauperis*. As such, the Court will refer to Plaintiff's fee waiver application as an "IFP Application."

Complaint, (ECF No. 1-1). The next day, the Court granted Mr. Smith's IFP Application, but stated that "[t]he proffered Complaint offends Federal Rule of Civil Procedure 8 (which requires a short and plain statement of the grounds for this Court's jurisdiction) and [Mr.] Smith's claims for relief" (the "August 17 Order"). (ECF No. 2, at 1.) The Court ordered the Clerk to provisionally file the proffered Complaint, and further ordered Mr. Smith, by no later than September 17, 2023, to "file an Amended Complaint, with a Ghostwriting Form attached, which outlines in simple and straightforward terms why [Mr.] Smith thinks that he is entitled to relief and why the Court has jurisdiction over his case." (ECF No. 2, at 1 (citing Fed. R. Civ. P. 8(a)(1) and (2).)

The Court ordered that the Amended Complaint must comply with the following directions:

> 1. At the very top of the amended pleading, Mr. Smith must place the following caption in all capital letters: "AMENDED COMPLAINT FOR CIVIL ACTION NUMBER: 3:23-cv-524."
>
> 2. The first paragraph of the particularized amended complaint must contain a list of defendant(s). Thereafter, in the body of the particularized amended complaint, [Mr.] Smith must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving rise to his claims for relief. Thereafter, in separately captioned sections, Mr. Smith must clearly identify each federal or state law allegedly violated. Under each section, Mr. Potter must list each defendant purportedly liable under that legal theory and explain why he believes each defendant is liable to him. Such explanation should reference the specific numbered factual paragraphs in the body of the particularized amended complaint that support that assertion.
>
> 3. [Mr.] Smith shall also include the relief he requests – what in the law is called a "prayer for relief."
>
> 4. The particularized amended complaint must stand or fall on its own accord. [Mr.] Smith may not reference statements in the prior complaint.
>
> 5. The particularized amended complaint must omit any unnecessary incorporation of factual allegations for particular claims and any claim against any defendant that is not well-grounded in the law and fact. *See Sewraz v. Guice*,

No. 3:08cv035, 2008 WL 3926443, at *2 (E.D. Va. Aug. 26, 2008).

(ECF No. 2, at 2.)

The Court advised Mr. Smith "that the failure to strictly comply with the Court's directives and with applicable rules will result in DISMISSAL OF THIS ACTION WITHOUT PREJUDICE for failure to prosecute." (ECF No. 2, at 2 (citing Fed. R. Civ. P. 41(b).)

On October 26, 2023, because Mr. Smith "called the Clerk's office" on September 15, 2023 stating that he was "not aware of the September 17, 2023 deadline to file an Amended Complaint", and in deference to Mr. Smith's *pro se* status, the Court issued an order extending Mr. Smith's deadline to file an Amended Complaint from September 17, 2023, to November 10, 2023. (ECF No. 5, at 1–2.) The Court again advised Mr. Smith "that the failure to strictly comply with the Court's directives and with applicable rules will result in DISMISSAL OF THIS ACTION WITHOUT PREJUDICE for failure to prosecute." (ECF No. 5, at 3 (citing Fed. R. Civ. P. 41(b).)

On November 13, 2023, Mr. Smith filed an Amended Complaint. (ECF No. 6.) On December 15, 2023, the Court issued an Order to Show Cause. (ECF No. 7.) In the Order to Show Cause, the Court explained:

> Courts have an "independent duty to ensure that jurisdiction is proper and, if there is a question as to whether jurisdiction exists, [they] must 'raise lack of subject-matter jurisdiction on [their] own motion,' without regard to the positions of the parties." *Mosley v. Wells Fargo Bank, N.A.*, 802 F. Supp. 2d 695, 698 (E.D. Va. 2011) (citing *Ins. Corp. of Ireland, Ltd. [v.] Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)); *see Plyler v. Moore*, 129 F.2d 728, 731 n.6 (4th Cir. 1997) ("[Q]uestions concerning subject-matter jurisdiction may be raised at any time by either party or *sua sponte* by [the] court."). As stated in 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

3

(ECF No. 7, at 1–2 (alterations in original).) The Court determined that "Mr. Smith's Amended Complaint does not clearly identify the factual basis for the intended claims", and "does not adequately establish that jurisdiction is proper in this Court." (ECF No. 7, at 2.) However, in deference to Mr. Smith's *pro se* status, the Court provided Mr. Smith an opportunity to file a Second Amended Complaint by January 11, 2024. (ECF No. 7, at 2.) On January 16, 2024, Mr. Smith filed a Motion for Extension of Time, requesting that the Court extend his deadline to file a Second Amended Complaint to January 15, 2024, and attaching a proposed Second Amended Complaint. (ECF No. 8, at 1; ECF No. 8-1.) On January 22, 2024, the Court deemed Mr. Smith's Second Amended Complaint timely and directed the Clerk to file it, which the Clerk did that same day. (ECF No. 9, at 2; ECF No. 10.)

## II. Legal Standard

"Federal courts are courts of limited jurisdiction, meaning that a federal court is only empowered to consider certain types of claims." *Turner v. Ocwen Loan Servicing, LLC*, No. 2:18CV601 (MSD), 2020 WL 6995430, at *3 (E.D. Va. Mar. 2, 2020) (citing *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009)). Federal courts can only hear cases that present a federal question, 28 U.S.C. § 1331[3] ("federal question jurisdiction"), and cases worth over $75,000 that arise between citizens of different states, 28 U.S.C. § 1332[4] ("diversity jurisdiction"). If a case fits neither of these situations, the court lacks subject matter jurisdiction.

---

[3] 28 U.S.C. § 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[4] 28 U.S.C. § 1332 provides in relevant part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

4

Federal courts have an "independent duty to ensure that jurisdiction is proper." *Mosley v. Wells Fargo Bank, N.A.*, 802 F. Supp. 2d 695, 698 (E.D. Va. 2011) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)); *see Plyler v. Moore*, 129 F.3d 728, 731 n.6 (4th Cir. 1997) ("[Q]uestions concerning subject-matter jurisdiction may be raised at any time by either party or *sua sponte* by [the] court.") (emphasis added); *UTrue, Inc. v. Page One Sci., Inc.*, 457 F. Supp. 2d 688, 689 (E.D. Va. 2006) ("[F]ederal courts are obligated to confront and address jurisdictional defects *sua sponte*."). "When a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Mosley*, 802 F. Supp. 2d at 698 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)) (alterations removed).

"Courts have explained that '[t]he mere mention of a federal statute in a complaint does not create federal [] question jurisdiction.'" *Lauter v. Schaefer*, No. 2:20CV507 (ALWA), 2021 WL 4931315, at *3 (E.D. Va. Oct. 6, 2021), *aff'd*, No. 21-2189, 2021 WL 6101652 (4th Cir. Dec. 22, 2021) (quoting *Matousek v. City of Norfolk*, No. 2:18CV609 (RAJ), 2019 WL 9143509, at *4 (E.D. Va. Jan. 29, 2019)) (first alteration in original). "Rather, federal [] question jurisdiction requires that a party assert a substantial federal claim." *Matousek*, 2019 WL 9143509, at *4 (citation omitted) (dismissing *pro se* action on jurisdictional grounds despite *pro se* plaintiff stating in complaint that federal question jurisdiction was applicable where complaint "contained a passing reference to '[Americans with Disabilities Act] violations'").

---

(1) citizens of different States[.]

28 U.S.C. § 1332.

5

When analyzing whether diversity jurisdiction is proper, "[c]ourts generally determine the amount in controversy by reference to the plaintiff's complaint." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (citation omitted); *see also Wiggins v. N. Am. Equitable Life Assur. Co.*, 644 F.2d 1014, 1016 (4th Cir. 1981) ("Ordinarily the jurisdictional amount is determined by the amount of the plaintiff's original claim, provided that the claim is made in good faith."). The United States Supreme Court has explained, however, that an action brought to federal court on the basis of diversity jurisdiction must be dismissed where "'from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover'" the jurisdictional amount. *Moch v. Asheville Hotel Assocs., Ltd.*, 977 F.2d 573, at *2 (4th Cir. 1992) (unpublished) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

### III. Analysis

Here, Mr. Smith has not identified, and the Court cannot identify, a valid basis for either federal question or diversity jurisdiction. Like his Complaint, (ECF No. 1-1), and his Amended Complaint, (ECF No. 6), Mr. Smith's Second Amended Complaint is discursive, difficult to decipher, and does not clearly identify (i) the factual basis for his intended claims or (ii) the basis upon which this Court can exercise subject matter jurisdiction over this action.

In his Second Amended Complaint, Mr. Smith states that from August 20, 2021 "until currently", Defendant Antonyo D. Keller "hack[ed] into unauthorized electronic devices" belonging to Mr. Smith and his family members. (ECF No. 10 at 1, ¶¶ 1, 3.) Mr. Smith claims that, as a result, he has "been humiliated throughout social media, mainstream media" both "publicly" and "politically", damaging Mr. Smith's "family", "character", "career", "well-being", "reputation and more." (ECF No. 10 at 1, ¶¶ 2–3.) To support these allegations, Mr. Smith states that after discovering that his "phone and bigo live account" had been "hacked", his

phone began to "do out[-]of[-]the[-]ordinary things like[] get real[ly] hot and turn off . . . start playing music on its own or change to different songs on its own, drop phone calls constantly . . . [its] screen would move by itself", and Mr. Smith "would often get restricted phone calls." (ECF No. 10, at 3 ¶ 4.) Mr. Smith posits that these are "tattletail signs" that Mr. Keller hacked his phone. (ECF No. 10, at 3 ¶ 4.) Mr. Smith also alleges that broadcasters "on bigo live . . . would post up a picture and short su[]bliminal caption message[s] letting [him] know that they know actual things that [Mr. Smith was] doing" due to defendant hacking Mr. Smith's phone. (ECF No. 10, at 3 ¶ 4.) For relief, Mr. Smith requests 85–100 million dollars. (ECF No. 10, at 10–11.)

As explained above, federal courts can only hear cases that present a federal question or cases disputing more than $75,000 that arise between citizens of different states. *See* 28 U.S.C. §§ 1331, 1332. Although Mr. Smith refers in passing to "18 U.S.C. § 1030 Computer Fraud and Abuse Act",[5] (ECF No. 10, at 8), nothing in the Second Amended Complaint ties this claim of

---

[5] 18 U.S.C. § 1030 provides in relevant part:

(a) Whoever—

>   (1) having knowingly accessed a computer without authorization or exceeding authorized access, and by means of such conduct having obtained information that has been determined by the United States Government pursuant to an Executive order or statute to require protection against unauthorized disclosure for reasons of national defense or foreign relations, or any restricted data, as defined in paragraph y. of section 11 of the Atomic Energy Act of 1954, with reason to believe that such information so obtained could be used to the injury of the United States, or to the advantage of any foreign nation willfully communicates, delivers, transmits, or causes to be communicated, delivered, or transmitted, or attempts to communicate, deliver, transmit or cause to be communicated, delivered, or transmitted the same to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it;
>
>   (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—

this *personal* hack to the Computer Fraud and Abuse Act, or any other federal law. As explained above, passing references to federal laws are insufficient to support federal question jurisdiction.

---

> (A) information contained in a financial record of a financial institution, or of a card issuer as defined in section 1602(n) of title 15, or contained in a file of a consumer reporting agency on a consumer, as such terms are defined in the Fair Credit Reporting Act (15 U.S.C. 1681 et seq.);
>
> (B) information from any department or agency of the United States; or
>
> (C) information from any protected computer;
>
> (3) intentionally, without authorization to access any nonpublic computer of a department or agency of the United States, accesses such a computer of that department or agency that is exclusively for the use of the Government of the United States or, in the case of a computer not exclusively for such use, is used by or for the Government of the United States and such conduct affects that use by or for the Government of the United States;
>     \*    \*    \*
>
> shall be punished as provided in subsection (c) of this section.

18 U.S.C. § 1030(a). The Computer Fraud and Abuse Act defines a "protected computer" as a computer

> exclusively for the use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects that use by or for the financial institution or the Government.

18 U.S.C. § 1030(e)(2)(A).

"The Computer Fraud and Abuse Act is primarily a criminal statute designed to combat hacking . . . . However, the statute provides that '[a]ny person who suffers damage or loss by reason of a violation of this section' has the ability to bring a civil suit 'to obtain compensatory damages and injunctive relief or other equitable relief.'" *Federated IT, Inc. v. Anthony*, No. 1:18CV1484 (LMB/JFA), 2020 WL 4747784, at \*5 (E.D. Va. May 12, 2020), *report and recommendation adopted*, No. 118CV1484 (LMB/JFA), 2020 WL 3057760 (E.D. Va. June 8, 2020) (quoting *Estes Forwarding Worldwide LLC v. Cuellar*, 239 F. Supp. 3d 918, 922 (E.D. Va. 2017) (quoting 18 U.S.C. § 1030(g)).

*See, e.g., Matousek*, 2019 WL 9143509, at *4; *Lauter*, 2021 WL 4931315, at *3. Because Mr. Smith refers to 18 U.S.C. § 1030 only in passing and does not tie his allegations to that or any other federal law,[6] the Court concludes that he has failed to assert a substantial federal claim. Accordingly, the Court lacks federal question jurisdiction. *See Turner*, 2020 WL 6995430, at *4; *see also Matousek*, 2019 WL 9143509, at *4; *Lauter*, 2021 WL 4931315, at *3.

Next, the Court may not exercise diversity jurisdiction under 28 U.S.C. § 1332 for at least two reasons. First, Mr. Smith fails to allege the citizenship of himself or of either defendant in his Second Amended Complaint. (*See generally* ECF No. 10); *see Mosley*, 802 F. Supp. 2d at 697 n.2 (declining to consider diversity jurisdiction as a basis for federal subject matter jurisdiction where parties did not allege diversity jurisdiction as a basis for federal subject matter jurisdiction). Second, although Mr. Smith requests 85–100 million dollars in damages, he has failed to plausibly allege *any* claim, and thus "from the face of the pleadings, it is apparent, to a legal certainty, that [Mr. Smith] cannot recover" the jurisdictional amount of over $75,000. *See Moch*, 977 F.2d 573, at *2.

Because the Court lacks subject matter jurisdiction, the Court DISMISSES this case WITHOUT PREJUDICE. *See* Fed. R. Civ. P. 12(h)(3).

An appropriate Order shall issue.

It is SO ORDERED.

Date: 5/15/24
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

---

[6] Under a header titled "Federal Laws" in the Second Amended Complaint, Mr. Keller also makes a passing reference to "S. Rept. 111-290 – DATA Breach Notification Act." (ECF No. 10, at 9.) Senate Report No. 111-290 refers to a report submitted by the Senate's Committee on the Judiciary, *see* S. Rept. 111-290, and is not itself a federal statute. *See* S. Rept. 111-290. As such, it cannot supply a basis for federal question jurisdiction.

9